1-10-0609 Juan Rodriguez v. Chicago Partners Good morning, Your Honors. Jim Vizzier on behalf of the petitioner appellant, Juan Rodriguez. Please proceed. May it please the Court, Counsel. We're here for an appeal from a decision of the Honorable Toll Mayor from the Circuit Court of Tooke County with respect to a decision upholding the denial of a permanency award from Arbitrator Black in the Workers' Comp Commission of December 18, 2006. By way of brief history, Mr. Rodriguez works for the Chicago Park District and has since 1989. He currently is still employed as a carpenter there and has been a model employee. On May 1, 2003, Mr. Rodriguez injured his right shoulder while assisting laborers unload heavy debris from a truck. Medical records, reports, and testimony verify the condition. On May 12, 2005, after two preceding 19B hearings, Arbitrator Hagan indicated in her ruling that the injury was work-related. She also indicated in her ruling that the condition had not yet reached a permanent condition. The Commission adopted, affirmed, and remanded for further proceedings to determine further amounts of total temporary compensation as well as permanent disability, if any. Of note, one of the things that I believe will be of major issue today is the fact that Arbitrator Hagan indicated that Mr. Rodriguez had provided insufficient evidence to prove that Mr. Rodriguez's present worsened complaints of ill-being were causally related to the accident of May 1, 2003. Counsel, it's your position that the Commission's finding is the law of the case and that they found that there was, in fact, causation established as the law of the case. Is that your position? That is my position, sure. Is that a correct interpretation of the Commission's original finding? Didn't the Commission say its finding was limited to the condition as of February 7, 2004? They did indicate that. However, that is with respect to payments on TTD. It did not have to do with Mr. Rodriguez's permanency award. Within the holding, they also indicated that they would reserve any issues with respect to permanency. I think that had to do with only the TTD payout as a cutoff, because at that point in time, Dr. Squamberg was releasing Mr. Rodriguez back to work, but not formally discharging him until February 3, 2004. So you're disputing the fact that they found in the original decision that the Commission found that the claimant had failed to establish causation for any condition of ill-being after that date? Isn't that what they said? That is what they said. I believe that at that point they're saying, listen, there's a causation, in fact, with respect to the injury. I think once you prove causation, you don't need to prove it again in a permanency award. In that specific holding, I think she is saying, at this time, TTD benefits are being cut off. It's contemporaneous with the fact that he was being returned to work and formally discharged from Dr. Squamberg's care. She then also in her holding, as I've indicated, said, reserve for permanency, which then happened subsequent to that. If I may continue, with respect to the permanency hearing on December 18, 2006, Arbitrator Black admitted to evidence one progress known of Dr. Tonino. At that hearing, there was a discussion about exhibits. The exhibits were marked 1 through 19, previous to Dr. Tonino. In the 19B hearing, they were talked about. They did a renumbering, and there was exhibits 20, I believe, and 21. In the holding of Arbitrator Black, he indicated that counsel for Mr. Rodriguez only submitted one progress note from Dr. Tonino. He did not indicate that he had reviewed any of the prior exhibits. However, that was discussed. The issue before the Court with respect to that is in the Honorable Black's decision, he indicates there wasn't sufficient evidence based upon only providing one report from Dr. Tonino. Obviously, that's clearly against the manifest way of the evidence. There were 20 exhibits in total that were submitted to the Court. I believe, based upon his ruling, he just did not look at the previous 19. Counsel, at the start of the arbitration hearing, didn't the arbitrator very clearly state he would take notice of the prior proceedings in the case, and he began his ruling by stating he was adopting the findings that resulted from the first hearing? It does, in fact. Isn't he acknowledged taking that into consideration? I don't dispute that that is what it says. In my opinion, I believe that's pro forma language as part of the order. In the body of the order for which Honorable Black wrote himself, he indicates which contradicts that. He says the only thing submitted was Dr. Tonino's progress report. Right. But can't that be read to indicate the only additional medical evidence, additional that was submitted, which was true, was Dr. Tonino's note? That would be additional at that hearing. At that hearing, true, yes. So that doesn't preclude him having considered the earlier evidence, does it? Except he says based upon the insufficient evidence that was provided. I think if you look at the total weight of the manifest weight of the evidence submitted at that specific time, there are seven additional records from seven doctors in total. I don't know if they overlap or not, but they all indicate some sort of permanency situation. I also believe that Arbitrator Black's ruling that because Mr. Rodriguez had provided insufficient evidence to prove causation, his claim for permanent disability is denied. Again, I think the law of the case, as previously stated here, follows. You do not need to prove causation again once you have established it.  You need to prove that your work-related injury is now permanent. I believe that he does that with respect to the submission of all 20-plus exhibits, with respect to the seven different doctors at Opine, as well as Mr. Rodriguez himself, about his physical restrictions, as well as his pain and discomfort. I believe that the parties have agreed also that permanency was not an issue at the 19B, and as such it was reserved for the permanency hearing. And then again, to just kind of reiterate the fact that Arbitrator Black said that the only thing submitted was a Tenino progress report, that was upheld by the commission and then followed into the circuit court and upheld by Honorable Elmer James Tolmar III. In his decision, he claims the arbitrator denied Rodriguez's claim for permanency based upon the evidence submitted at the permanency hearing. He goes on to say that that was Rodriguez's testimony in two medical reports. He indicated that Mr. Rodriguez had the opportunity to submit medical testimony during his permanency hearing and that his decision to merely submit Dr. Tenino's progress note as medical evidence was insufficient to prove permanency. Well, what do you make of his stating that he was considering and taking notice of all of the prior evidence in the case? What do you interpret that as meaning, then? In the pro forma language of the order, I would present to the Court that he did not. I would say that that is pro forma language on a court order. However, when he goes in to actually demonstrate what he reviewed, he contraindicates the fact that that's what occurred. I believe that because documents were not specifically tendered to him at that point, he believed that the only evidence submitted to him was an additional report from Dr. Tenino. So when a judge uses the language which is frequently used in arbitrary of a judge, I'm basing my decision after a careful review of all the evidence. You could interpret that as meaning something must have been overlooked. That's not true? It's not that I don't believe it's true. If it had said that and he went on to say I reviewed all exhibits, then I would be cuffed and I would be out of the case. The fact that he says he did not is what brings us here. He says only one thing was submitted and that's what he based his decision on. If he had based it on the 19 previous exhibits that talk about all of these permanent restrictions, limitations, and damages, then I would say, Mr. Rodriguez, you don't have a case, but he does. If I go on to exemplify the distinguishing TTD versus permanency in Hagan's decision, the manifest way of the evidence, that is all of the evidence that was submitted, again, that's all of the exhibits, unequivocally and undeniably established that Mr. Rodriguez had permanency issues with respect to his rotator cuff tear and that those injuries were related to the work injury of May 1, 2003. Arbitrator Black indicated that he reviewed all the evidence, or at the very least, he should have reviewed more than Dr. Tenino's progress report. Had he done so, reviewed all of the evidence, he would have realized that on August 25, 2004, Dr. Nicholson, an independent medical examiner hired by the Chicago Park District, opined that there was a causal connection and that Mr. Rodriguez had reached MMI. He also recommended an SCE to assign permanent restrictions. This is the Chicago Park District's own medical, hired, independent expert. He says causation, he says let's do an analysis on an SCE to assign permanent restrictions. All of that is not even taken into account at the permanency hearing. I firmly believe that if all exhibits were reviewed, there would have been a much different decision. It would have been clear that if the manifest way of the evidence supported a permanent restriction. Thank you, Counsel. Counsel, please. Good afternoon, Your Honors. Good afternoon, opposing counsel. Leon Pulikovich for the Aptly Respondent Chicago Park District. Your Honors, this case initially started as a 19B back in 2004. It was an emergency hearing and it was filed by Mr. Rodriguez seeking temporary total disability benefits, payment of medical expenses, and penalties against the Chicago Park District. Arbitrator Hagan, the arbitrator that heard the initial 19B, indicated that based on her review of all the evidence, including the IME examination by Dr. Nicholson, she felt that the report of the treating physician, Dr. Slamberg, who performed the surgery on Mr. Rodriguez and the surveillance tapes that the Park District produced during the course of this 19B hearing caused her to make a decision that as of February 7, 2004, the petitioner's or Mr. Rodriguez's present condition of ill being was related up to that point in time to his injury back in May 1 of 2003. The way I read her decision, Your Honors, there was no causal connection established beyond February 7, 2004. Well, she didn't exactly say that, though, did she? What she said was his present worsened complaints. She didn't say none of his complaints are causally related. She said his present worsened complaints. That's correct, Your Honor. That's correct. So doesn't that kind of imply that some of his complaints she viewed as being causally related? Up to February 7, 2004. Which makes that very clear. Which makes that very clear. And she basically states in her decision that based on Dr. Slamberg releasing him to full duty work, I believe by either January 7 of 2004, I believe the last visit with Dr. Slamberg was February 7 of 2004, and that's the period where she cut off the TTV. She was also very impressed with the surveillance tapes of her district. Just to stick with this point, though, there's no place that Arbitrator Hagan says none of his, as of her arbitration date, there's no place that she says none of his complaints are causally related. She only says his worsened complaints. Why would she need to use that language if she wasn't making a distinction? I think the way she wrote it, the way I interpret it, she's present worsened condition of ill-being is to me synonymous with present condition of ill-being. That's the way I look at the decision. Well, and that's the way the subsequent arbitrator interpreted it. That's correct. That's correct. Because the arbitrator Black said, it is therefore settled that the petitioner provided insufficient evidence to prove that of May 12, 2005, his complaints of ill-being were causally related. All of them. That's correct. That's correct. And the gist of this case is that causal connection was one of the issues in the 19B proceeding, but it was also an issue at the permanency hearing back in December of 2006 before Arbitrator Black. Mr. Rodriguez had an opportunity at the permanency hearing to redress the causal connection issue. He could have established some sort of evidence to indicate that as of May 12, 2005, the date of the arbitrator Hagan's decision, until the time that he had this permanency hearing before Arbitrator Black, that he could have come up with some sort of medical report indicating that his condition of ill-being was related, going back to like May 12, 2005. But Arbitrator Black, all he had in front of him before the permanency hearing was a progress note from Dr. Tonino and the petitioner's testimony. Which, according to the arbitrator's words, remained unchained. And I had one exhibit, a report from Mercy Works, pretty much releasing the person, you know, back to work. There was really nothing there that the arbitrator could hang his hat on to establish causal connection. Well, that segues into his other issue. He's saying that the arbitrator ignored the earlier evidence and simply went on Tonino's note as the only medical evidence. What's your response to that? My response to Arbitrator Black, in his decision, indicated that he adopted the prior findings of Arbitrator Hagan. That 19B proceeding dealt with, it didn't deal with permanency. It dealt with penalties. It dealt with medical bills. It dealt with TTV. As a matter of fact, when the arbitrator awarded penalties against the Park District, I filed a review. You know, with the commission, they reduced the penalties. Opposing counsel, with respect to the issue of causal connection in 19B, where it indicates that Arbitrator Hagan found causal connection hands up February 7, 2004, there was no review filed. But still, petitioner had an opportunity at the permanency hearing. He stipulated that two of the issues at the permanency hearing were causal connection and nature and extent. But apparently, he didn't have enough, you know, medical documentation to establish causal connection. And based on that fact alone, Arbitrator Black denied compensation. And Arbitrator Black also was aware of the prior 19B proceedings and what transpired at the 19B proceedings. So it's clear to you the second arbitrator, in fact, did consider the evidence from the first hearing. That's my interpretation, Your Honor. And, you know, the bottom line on this thing, if causal connection was established, as opposing counsel states, you know, at the 19B hearing, you know, why would opposing counsel at the subsequent permanency hearing stipulate that causal connection is an issue? He was given an opportunity to produce evidence to show that as of May 12, 2005, to the time of the permanency hearing, his present condition of the ill-being with respect to the shoulder was related to the injury of May 1 in 2003. And there was nothing there. I mean, the arbitrator looked at the exhibits, and he felt that he failed to prove causal connection. Now, with respect to Dr. Nicholson, as an aside, Nicholson was just an INA doctor that the Parliament District used in the 19B proceeding. The really credible doctor that the arbitrator, Hagan, relied on in the 19B proceeding was a surgeon that performed the surgery, Dr. Slamberg. And she also took a look at the surveillance tapes showing that the Petitioner was capable of labor-slash-carpentry work, Slamberg releasing him to work full duty. And February 7, 2004, was the date where she cut off TTV benefits. And during the process of this 19B, I was the same attorney that tried the 19B proceeding. They were asking for TTV beyond February 7, 2004. They were asking for TTV benefits going to, like, November of 2004, and they didn't prevail. And they didn't file a review on this specific issue of causal connection. The law of the case, Your Honor, is basically the way I see it. That's the argument that my opposing counsel is using, is that causal connection was established at the 19B hearing. I disagree with opposing counsel. Causal connection was established, but there was a little caveat attached to it. The caveat was, and the arbitrator herself voted in those specific terms as of February 7, 2004, and not beyond. Wait a minute. I respect the answer, Your Honor. I'll answer, Judge. I'm sorry. The arbitrator, in the second opinion, made quite clear what causal connection he was talking about. He specifically says in here, this matter then proceeded to a second arbitration hearing on December the 18th, 2006. The only issues remaining in dispute were causal connection to the petitioner's current present, parenthesis, December 18, 2006, condition of ill being. So the causal connection being spoken about in the second hearing is whatever his condition was in December of 2006, not the condition in February of 2004, which, according to these, are two different conditions. And so they found they didn't present any evidence that his then current condition of ill being was causally related to his injury. And so they denied permanent disability. The commission approved that, and so the commission obviously has adopted the arbitrator's interpretation of both prior decisions, the prior arbitrator decision and the prior commission decision confirming it. So there are two different present conditions that are being talked about here. They're not one. That's correct. That's correct. Are there any more questions, Your Honors? Thank you. Thank you very much. The panel, please. Is it possible for a person to have one condition on February the 7th, 2004, and a different condition on December 18, 2006? Absolutely. Okay. So what's wrong with these decisions, then? The decisions are based upon Dr. Tenigo's progress note and only that. I think if you look at the eight medical records and testimony of doctors from way of evidence beginning on March 25, 2004, from Dr. Imlock, May 27, 2004. But they were present in the original hearing, were they not? They were. And the second decision says the petitioner has presented no additional medical evidence on the issue of causation. Additional to what? We have to be the first arbitration hearing. Absolutely. It couldn't be additional to anything else. Absolutely. But that would be one of the issues, I think, the law of the case. As soon as you establish causation, that's all. No, you've established causation as of February the 7th, 2004. You never established causation as to December 2006. That's what this arbitrator is talking about. I think that is what he's talking about. But the law of the case says causation, once you injure yourself, once you have a rotator cuff injury, it's always related to the work accident. It never is not. Right? So you're trying to then create what? I don't know what his condition was in December the 18th, 2006, that the arbitrator is talking about. Evidently, you're suggesting that there was some prominent condition in December the 18th, 2006, and this arbitrator says you never established any causal connection between that permanent condition and the injury you suffered. You may have established causal connection. You did, as between his condition in February the 7th, 2004. That's why I asked you the question. If you've established causal connection as of 2004, why do you think that leads to the conclusion there's also causal connection as to whatever his condition might be in 2006? Because all of the records that are intervening go to the fact that he has a permanent condition. There's no intervening cause of injury or otherwise. I think once you prove causation, that you were injured as a result of an accident and it's work-related, that rotator cuff will be related to that. Arbitrator Hagan only cut off the date of February 7th for TTE purposes, never for permanency. Therefore, I think Arbitrator Black relied on that, went back to her decision and said, okay, now you have to prove causation again. She wasn't saying that. She was saying permanency is wide open. You've proved causation. I'm cutting your TTE off as of February 7th, 2004. She didn't expire the causation date. She didn't say, okay, now you're never, it's never related again. Prove it up again. Petitioner has provided insufficient evidence to prove that Petitioner's present worsened complaints of ill-being are causally related to the accident of May the 1st, 2003. That means that she's talking about a different condition. Present worsened complaints. He's complaining about something more than what was there in February of 2004. And she's saying you didn't present any evidence of a causal connection to this increased condition to your injury. What's the increased condition? It would be the permanent nature of it. I think that's why she would... No, that's a conclusion, that it's permanent. What's the condition? The condition would be his limitations, his restrictions. She talks about some worsened complaints. But I think the reason that she says that is because she's taking away his benefit of TTE, not to deny him a permanent, a permanency hearing. She didn't deny him a permanency hearing. Correct. That's what I'm saying. I think that the reason... Neither did the commission. I agree. But unfortunately, when they went back to the permanency commission, hearing other than what was ever in the record, at the first 19B hearing, the only thing additional that he put into the record was one additional record. And they say that there's no additional medical evidence on the issue of causation. I agree with the language of the order. But what I think that they're basing it on is the fact that she cut off the TTE benefits as some sort of expiration to causation. The causation was already proven. Once you prove it in a 19B, you never have to prove it up again. It's there. Provided the condition's the same. Sure. But a permanent nature... But who says the condition's the same? I believe that it's a rotator cuff injury and all of the symptoms associated with it follow and lead... What do they mean by worsened condition? Excuse me? What do they mean by worsened condition? Well, imagine if you undergo a surgery and then you get better, but then it somehow goes... It plateaus, but then gets worse with time because you're using it again. You're back to work again. You're functional. That's the problem. I think that the issue wasn't to somehow nullify his right to a permanency issue. Is your theory that once you have a rotator cuff injury, any other injury you may have to your shoulder for the rest of your life is necessarily related to the cause of the rotator cuff injury? I would say in the use and enjoyment of that shoulder, yes. Forever. Not forever. 30, 40 years. Not forever, but it's the condition for which he's complained about which now has progressed. It's not like he's claiming an ankle injury now or something like that. It's all in the same body part, all in the same area. And if you look at the 2004 records, it talks about his physical limitations, his restrictions, the fact that he can't abduct or reduct or flex. It's all of his problems. He can't work above his shoulder. These are all problems that he's always had. Thank you, counsel. Your time is up. Thank you. Clerk, we'll take the matter under advisement for disposition.